Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS with minor modifications the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. It is stipulated that all parties are properly before the Industrial Commission and are subject to and bound by the provisions of the Workers' Compensation Act, that the Commission has jurisdiction over the parties and of the subject matter, and that the employer-employee relationship existed between plaintiff and defendant.
2. It is stipulated that all parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of the parties.
3. The parties stipulate and agree to the following undisputed facts:
 (a) The plaintiff was employed by the defendant Weyerhaeuser from August 1, 1966 to present in positions as a pipe fitter, maintenance mechanic, and millwright in various departments and locations throughout the Weyerhaeuser plant. Until he was moved by the employer to the finishing department in 1989, the plaintiff had constant, frequent exposure to machinery or other parts of the plant which contained asbestos by doing, among other things, (1) disturbing asbestos-containing insulation while repairing, replacing, and dismantling equipment, machinery and pipes, (2) tearing out sections of the plant covered with asbestos insulation and (3) working in areas during which other persons were either dismantling and replacing asbestos-insulated machinery or tearing out parts of the plant that contained asbestos insulation. Plaintiff's service record and job descriptions were attached to the stipulations as stipulated documents.
 (b) The plaintiff was moved to the finishing department in 1989 because of having been diagnosed with a "probable" asbestos-related lung condition. The plaintiff's average weekly wage at the time of that diagnosis and his removal from exposure to the hazards of asbestos was $713.00.
 (c) The plaintiff was exposed to the hazards of asbestos in his employment with the defendant, for as much as 30 working days, or parts thereof, inside of seven (7) consecutive calendar months immediately prior to his date of last injurious exposure.
 (d) The parties stipulate and agree to facts necessary to prove plaintiff's occupational exposure to asbestos; therefore, an actual evidentiary hearing on this issue is unnecessary. The parties further stipulate that all medical testimony and evidence, and, if necessary, supplemental lay testimony, shall be presented by deposition and/or stipulation.
 (e) Plaintiff smoked cigarettes beginning when he was 19 or 20 years old. Plaintiff smoked until he was 45 years old. During the period he smoked, plaintiff smoked approximately one pack of cigarettes a day.
4. In addition, the parties stipulated into evidence 183 pages of documents, including discovery responses, medical records and employment records.
 ***********
Based upon the competent evidence of record herein, the Full Commission adopts the Findings of Fact of the Deputy Commissioner with minor modifications and finds as follows:
 FINDINGS OF FACT
1. Plaintiff, who is now fifty-four years old, has been employed by defendant for over thirty-one years. During his employment, he was exposed to asbestos fibers as stipulated to by the parties. The company had an asbestos surveillance program for its employees by sometime in the 1980's and plaintiff underwent periodic pulmonary function testing as part of that program. On May 25, 1989 he was evaluated by Dr. Robert Shaw, a pulmonologist, on referral from defendant. At that time he had no complaints regarding his breathing but his recent spirometry had indicated some deterioration of lung function. He was still smoking cigarettes as of that date. Based upon the information available at that time, including a chest x-ray which had been read by a physician (Dr. Weaver) who was a certified B-reader showing a profusion of 2/1; the pulmonary test function report which showed both restriction and obstruction, and plaintiff's symptom of clubbing (swelling of the fingernail beds); Dr. Shaw diagnosed him with obstructive airways disease and probable asbestosis. The doctor advised him to immediately stop smoking. During the next year, plaintiff was able to quit his smoking habit. When he returned to Dr. Shaw on June 20, 1990, his spirometry results showed improvement. Dr. Shaw last saw plaintiff in 1991.
2. Dr. Shaw confirmed his diagnosis of asbestosis in a December 2, 1992 letter to Weyerhaeuser, but stated that plaintiff likely had "mild asbestosis". However, at the time Dr. Shaw was deposed, it was his opinion that plaintiff's primary problem was obstructive airways disease which was probably related to his history of cigarette smoking. Dr. Shaw was uncertain as to whether plaintiff has asbestosis. He opined that it is more likely than not that plaintiff does not have "significant" asbestosis based upon his interpretation of the pulmonary test functions; however, he agreed that plaintiff meets the three most important criteria for a diagnosis of asbestosis using the criteria published by the American Thoracic Society. Dr. Shaw finally concluded that in his opinion, it is more likely that plaintiff does not have asbestosis.
3. Pursuant to a request of the Industrial Commission, Dr. Ted R. Kunstling, an expert in pulmonary medicine, performed an advisory medical committee examination of plaintiff on June 14, 1993. Dr. Kunstling is a selected panel physician for the Industrial Commission and has been seeing patients referred for asbestos related conditions from the Industrial Commission for approximately ten (10) years. Dr. Kunstling diagnosed plaintiff with having pulmonary fibrosis consistent with asbestosis. His diagnosis was based on (1) his findings that plaintiff's occupational exposure history placed him at a greater risk of developing asbestosis; (2) his physical examination which revealed that plaintiff did have some end-inspiratory rales in his lungs, which are sounds associated with asbestosis; (3) plaintiff's chest x-ray which revealed some interstitial reticular nodular types of infiltrates in both lungs which were consistent with pulmonary fibrosis; (4) and plaintiff's pulmonary function tests which showed a combination of obstructive and restrictive impairment. Pulmonary fibrosis is a fibrotic process involving interstitial areas of the lungs and is a condition that results in damage to the lungs, increased stiffness of the lungs, and restrictive pulmonary impairment that results in lower total lung capacity and volume capacity.
4. It was Dr. Kunstling's opinion that plaintiff, more likely than not, has asbestosis and some respiratory impairment of his lung function due to his asbestosis. Dr. Kunstling estimated that plaintiff has Class III or 25 to 30 percent respiratory impairment related to asbestosis alone.
5. Defendant subsequently sent plaintiff to Dr. Brian Boehlecke, a pulmonologist at the University of North Carolina School of Medicine, who examined plaintiff on September 28, 1994. Dr. Boehlecke is not a certified B-reader. According to Dr. Boehlecke, plaintiff had no "crackles" or rales on inspiration when he was examined. Plaintiff underwent a more comprehensive pulmonary function test which, in Dr. Boehlecke's opinion, indicated that what had previously appeared to be restrictive impairment was rather the effect of gas trapping due to his obstructive lung disease. Consequently, Dr. Boehlecke concluded that plaintiff has an obstructive pulmonary condition but not a restrictive one. Dr. Boehlecke also reviewed plaintiff's chest x-rays and a CT scan with a chest radiologist. In his opinion, the findings did not demonstrate interstitial fibrosis consistent with asbestos-related disease. His ultimate conclusion was that plaintiff has no clinically significantly asbestos-related lung disease.
6. Dr. Kunstling subsequently reviewed the CT scan utilized by Dr. Boehlecke in rendering his opinions and came to a different conclusion than Dr. Boehlecke. Dr. Boehlecke interpreted the CT scan as showing "minimal, if any," interstitial fibrosis. In Dr. Kunstling's opinion, the test revealed minimal interstitial pulmonary fibrosis consistent with asbestosis. He continued to believe that plaintiff has asbestosis, although the condition is not disabling and does not have as much effect on plaintiff's lung function as the obstructive lung disease.
7. Plaintiff sent his chest x-rays to Dr. Ghio, a pulmonologist who is also a certified B-reader. Dr. Ghio concluded that plaintiff has interstitial lung disease consistent with asbestosis.
8. There was a surprising dichotomy of medical opinion regarding whether the interstitial markings found on plaintiff's chest x-rays were indicative of asbestosis, particularly in view of the supposed standardization of readings from certified B-readers. Nevertheless, there were abnormalities on the x-rays which well-qualified pulmonary specialists believed were due to asbestosis. Greater weight is accorded to the opinions of Dr. Kunstling and Dr. Ghio on whether plaintiff has asbestosis over those of Dr. Boehlecke and Dr. Shaw. Plaintiff has had an occupational exposure to asbestos dust and there has been sufficient time since his exposure for fibrosis to develop in his lungs. Although plaintiff did not have significant restrictive impairment on pulmonary function testing in Chapel Hill, asbestosis can exist without that finding.
9. It was the opinion of Dr. Kunstling that workers exposed to asbestos in their employment, such as plaintiff, are at an increased risk of developing the disease, asbestosis, above members of the general public who are not exposed to asbestos and that plaintiff's exposure to asbestos in his employment was a cause or a significant contributing factor to the development of his asbestosis.
10. Based upon the totality of the evidence, plaintiff has proven by the greater weight of the evidence that he has developed asbestosis, an occupational disease; that his employment was a significant contributing factor in the development of his asbestosis; and that his employment placed him at an increased risk of developing asbestosis over members of the general public. Plaintiff's last injurious exposure to asbestos fibers ended in 1989 when he was transferred to the finishing department. During the preceding seven-month period, he was exposed to the hazards of asbestos fibers for at least thirty days, or parts thereof, in the course of his employment with defendant.
11. Pulmonary impairment due to asbestosis is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis.
12. Plaintiff has not suffered any loss of earning capacity as a result of his asbestosis.
13. The amount plaintiff would be entitled to recover for lung damage pursuant to N.C. Gen. Stat. § 97-31(24) would be substantially less than the compensation he will receive pursuant to N.C. Gen. Stat. § 97-61.5.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has developed the occupational disease of asbestosis due to his exposure to asbestos dust in his employment with defendant. N.C. Gen. Stat. § 97-53(24) and § 97-62.
2. Plaintiff's last injurious exposure to the hazards of this occupational disease occurred in 1989 while working for defendant-employer. N.C. Gen. Stat. § 97-57.
3. Plaintiff was exposed to the hazard of asbestos dust for at least thirty (30) days, or parts thereof, within seven consecutive months immediately preceding his last exposure in October 1989. N.C. Gen. Stat. § 97-57.
4. In 1989 plaintiff was removed from the occupation where he had been exposed to asbestos fibers. Although he sustained no disablement as defined by N.C. Gen. Stat. § 97-54 due to his occupational disease, he, nevertheless, would be entitled to compensation for one hundred and four weeks upon his removal from the occupational exposure. N.C. Gen. Stat. § 97-61.5.
5. The provisions of N.C. Gen. Stat. § 97-61.5 are not unconstitutional.
6. Plaintiff is entitled to receive compensation at the rate of $376.00 per week for one hundred and four weeks, beginning the date in 1989 when he was removed from the occupational exposure to asbestos dust. N.C. Gen. Stat. § 97-61.5(b).
7. In that plaintiff suffered no disablement as a result of his asbestosis through the date of hearing and in that any recovery for lung damage would be substantially less than his award under N.C. Gen. Stat. § 97-61.5, he is not entitled to further compensation for his occupational disease. N.C. Gen. Stat. § 97-61.5(b).
8. Plaintiff is entitled to have defendants pay all medical expenses incurred or to be incurred in the future by the plaintiff as a result of his compensable occupational disease for so long as such examinations, evaluations and treatments tend to effect a cure or give relief when the bills for same have been submitted and approved through the procedures adopted by the Industrial Commission. N.C. Gen. Stat. § 97-59.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay compensation to plaintiff at the rate of $376.00 per week for one hundred and four weeks, beginning the date in 1989 that plaintiff was removed from the occupational exposure to asbestos fibers. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendant shall pay all medical expenses incurred or to be incurred in the future by the plaintiff as a result of his compensable occupational disease for so long as such examinations, evaluations and treatments tend to effect a cure or give relief when the bills for same have been submitted and approved through the procedures adopted by the Industrial Commission.
3. An attorney's fee in the amount of twenty-five percent of the compensation awarded is hereby approved for plaintiff's counsel, which fee shall be deducted from the aforesaid award and paid directly to Mr. Scudder and Ms. Jones.
4. Defendant shall pay the costs.
 S/ _____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _____________ J. HOWARD BUNN, Jr. CHAIRMAN
S/ _____________ LAURA K. MAVRETIC COMMISSIONER